## In re Anonymous No. 56 D.B. 77

Disciplinary Board Docket no. 56 D.B. 77.

REMMICK, *Hearing Committee Member,* August 23, 1978—

### A. STATEMENT OF THE CASE

Respondent in this case is an attorney presently practicing law in the Commonwealth of Pennsylvania. The charges against him in this proceeding allege that the respondent violated Pennsylvania Disciplinary Rules 1-102(A)(4), (5) and (6); 6-101(A)(3); 7-101(A)(1), (2) and (3); and

9-102(B)(4) of the Code of Professional Responsibility in that respondent failed properly to perform his obligations to this client, and misled his client and forwarding counsel by his handling of the case, all to the harm of his client.

A hearing was held on March 16, 1978, on the question whether there was any violation of the Code of Professional Responsibility. After the hearing committee had determined that there were such violations, in accordance with Disciplinary Board Rule 89.151(d)(2) on June 27, 1978, a second hearing was held at which evidence relating to the appropriate discipline was heard.

## B.  FINDINGS OF FACT

1.  Respondent, [   ], Esq., is an attorney admitted to practice law in the Commonwealth of Pennsylvania since 1965, and has an office located at, [   ], [   ], Pa.

2.  On or about July 3, 1972, [A] sustained personal injuries in a motor vehicle collision involving [B].

3.  In July of 1972, [A] duly notified Safeguard Mutual Insurance Company (hereafter "Safeguard") of his personal injury and property damage claim.

4.  On February 1, 1973, [C], Esq., a [   ] lawyer who was related to [A] by marriage, forwarded to Safeguard [A]'s special damages and made a demand of $3,000.

5.  On March 7, 1973, Safeguard communicated a settlement offer of $1,000 to [C], with respect to [A]'s claim.

6.  On March 22, 1973, [C] communicated [A]'s rejection of the aforementioned settlement offer to Safeguard.

7.  On or about July of 1973, [C], on [A]'s behalf,

retained respondent to represent [A] with respect to all claims arising out of the accident in question, and turned over to respondent all available information and documents concerning said claims.

8.  Respondent and [C] orally agreed that a fee of 20 percent of any moneys received in this matter would be charged to [A], although [C] is unclear as to whether respondent was to receive 20 percent or one-half of the 20 percent.

9.  During most of the period respondent was representing [A], respondent and [C] were employed as attorneys in the legal department of the [   ] Company and consequently [C] had frequent direct contact with respondent and periodically inquired as to the status of [A]'s case.

10.  On August 24, 1973, respondent filed in the Court of Common Pleas of [   ] County, August term, a praecipe to issue a writ of summons in trespass for [A]'s claim against [B]. The writ of summons in trespass was returned marked "Not found" because of an incorrect address.

11.  Respondent took no further action to pursue the aforementioned litigation.

12.  In September of 1973, respondent falsely advised [C] that he had reissued the summons in [A]'s case.

13.  On August 13, 1975, respondent falsely advised [C] that [A]'s case would be on the arbitration list in September of 1975.

14.  Respondent never contacted Safeguard concerning [A]'s claim.[1]

---

1. Affidavit by [D], Claims Manager of Safeguard Mutual Insurance Company, February 22, 1978: "Safeguard's file with respect to the claim of [A] against [B] reveals no communication between any representatives of Safeguard and any attorney representing [A] with respect to [A]'s claim after April 27, 1973."

15. In February of 1976, respondent falsely advised [C] that he had attended a pre-trial conference, and that a settlement offer of $3,200 had been made by Safeguard with respect to [A]'s claim.

16. Respondent failed to engage in any settlement negotiations in connection with the aforementioned claim, no such pre-trial conference was held and Safeguard made no settlement offers to respondent with respect to [A]'s claim.[2]

17. By letter dated March 2, 1976, respondent falsely advised [A] of the supposed settlement offer and requested that [A] contact him concerning it so that he could relay [A]'s response to the insurance carrier.

18. In March of 1976, [C] told respondent that [A] would accept the $3,200 in settlement of his claim.

19. Thereafter, respondent advised [C] on at least three occasions that releases reflecting the $3,200 settlement were forthcoming from Safeguard.

20. On April 30, 1976, respondent advised [C] that he was planning to prepare a praecipe to enter judgment in [A]'s case, which would be filed on May 3, 1976, instead of waiting for the settlement releases.

21. On May 25, 1976, respondent advised [C] that he had filed a judgment in [A]'s case and that he had mailed [A]'s file to [C]; however, the file was not received by [C].

---

2. Affidavit by [D]: "Safeguard's file with respect to the claim of [A] against [B] does not reflect any settlement offers being made with respect to said claim after April 27, 1973.

"I have no personal recollection of any settlement offers being made with respect to this claim after April 27, 1973."

22. By letter dated July 26, 1976, respondent advised [C] that Safeguard had reneged on the settlement agreement and that [A]'s case would have to proceed to arbitration; however respondent never advised either [C] or [A] of an arbitration date.

23. In October of 1976, [A] consulted another attorney, [E], Esq. regarding representation of the accident claim.

24. Thereafter, [E] contacted respondent and asked respondent to transfer [A]'s file and respondent agreed to do so. By letters dated October 22, 1976 and February 16, 1977, [E] repeated his request that respondent release [A]'s file.

25. On approximately six occasions during the period April through May of 1977, [C] unsuccessfully attempted to secure [A]'s file from respondent.

26. On May 16, 1977, [C] met with respondent and respondent advised him that he had mailed [A]'s file to [E].

27. To date, [A]'s file has not been released by respondent either to [C] or [E].

28. On September 23, 1977, [A]'s trespass action against [B] was dismissed for lack of prosecution.

29. [A] received $4,000 in settlement of a malpractice complaint against respondent.

30. The complaint in this action to the Disciplinary Board was brought by [C] and signed "on behalf of [A]" whereupon Disciplinary Counsel initiated this proceeding.

## C. DISCUSSION

Respondent's sole defense in this proceeding is a challenge to the sufficiency and propriety of the manner in which the complaint was filed. Respondent offered no evidence except on the question of the appropriate discipline. The hearing committee

finds no merit in this defense. We believe that the identity of the complainant does not affect the validity of the proceeding, and that if the complainant must be a party aggrieved, counsel who forwarded the matter to respondent has standing to be the complainant either on his own behalf or on behalf of the injured client.

The Disciplinary Rules do not specifically state that the complainant must be a person aggrieved. However, Disciplinary Rule §87.1(b) provides: ". . . the Office of Disciplinary Counsel shall undertake and complete an investigation of all matters involving alleged violations of Chapter 81 of this Title (relating to Code of Professional Responsibility) called to its attention by written complaint filed pursuant to §87.2 of this Title (relating to contents of complaint) . . ."

Further, Disciplinary Rule §85.2(a) permits *any* complaint alleging a grievance concerning an attorney where it is communicated to the Office of the Disciplinary Committee *or* where considered by the Office of Disciplinary Counsel on its own motion. There is no apparent reason why the agent of an aggrieved party should be precluded from filing for the party, particularly in view of the fact that Disciplinary Counsel on its own motion, may institute action.

Disciplinary Rule §87.2 provides that "[e]ach complaint relating to alleged misconduct of an attorney shall be in writing and signed by the complainant. . . ." However, Pa.R.D.E. 210 provides that "[n]either unwillingness nor neglect of the complainant to sign a complaint or to prosecute a charge, nor settlement, compromise or restitution, shall, in itself, justify abatement of an investigation into the conduct of an attorney."

Based upon the aforementioned regulations, it is

clear that a complaint brought by any person will be sufficient to invoke further investigation by the Disciplinary Counsel, whether or not the complainant signs a complaint. Moreover, under the facts before us, [C] was a proper party to initiate the complaint, whether he did so on his own behalf or on behalf of [A]. [C]'s status as the lawyer who referred [A]'s case to respondent certainly gave him standing to initiate the complaint, if such standing is required.

Accordingly, we find respondent's technical or procedural defense to this action to be without merit.

Turning to the violations of professional misconduct alleged in the complaint, we hold that respondent had failed to put forth any sufficient defense to said claims and, based upon the facts adduced at the hearing, respondent has violated Disciplinary Rules 1-102(A)(4), (5) and (6),[3] 6-101(A)(3),[4] 7-101(A)(1) and (3),[5] and 9-102(B)(4).[6]

---

3. D.R. 1-102 Misconduct (A)(4)—A lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; (5)—A lawyer shall not engage in conduct that is prejudicial to the administration of justice; (6)—A lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law.

4. D.R. 6-101 Failing to Act Competently (A)(3)—A lawyer shall not neglect a legal matter entrusted to him.

5. D.R. 7-101 Representing a Client Zealously (A)(1)—A lawyer shall not intentionally fail to seek the lawful objectives of his client through reasonably available means . . .; (3)—A lawyer shall not intentionally prejudice or damage his client during the course of the professional relationship . . .

6. D.R. 9-102 Preserving Identity of Funds and Property of a Client (B)(4)—A lawyer shall promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

Respondent contends that he was not retained as counsel for [A], but alleges that he was secured to assist [C] in resolving said claim. However, we hold that his is not an accurate interpretation of the agreement between [A], [C], and respondent. It is the opinion of the committee that [C] was merely the agent of [A] with respect to respondent and that respondent served in the capacity of retained counsel. Based on the evidence introduced, it is clear that [A] and [C] relied upon respondent to take full control over the matter, and that respondent so understood his responsibilities. Further, we hold that respondent ignored [A]'s case, permitted it to be dismissed for want of prosecution and attempted to conceal this by giving false and misleading information to [A], [C] and [E] as to the disposition of the case.

Respondent failed to communicate with Safeguard concerning [A]'s claim and failed to procure a settlement offer from Safeguard.

Respondent failed to follow through to obtain service of the writ of summons or to file a complaint thereby prejudicing his client's case by permitting the case to be dismissed for want of prosecution.

Upon receipt of notice that he had been replaced as attorney for [A] respondent failed to relinquish the file containing essential documentation of [A]'s claims despite numerous requests by [A], [C] and [E].

Therefore, the hearing committee is convinced that respondent has violated the Code of Professional Conduct and specifically Disciplinary Rules 1-102(A)(4), (5) and (6); 6-101(A)(3); 7-101(A)(1), (2) and (3); and 9-102(B)(4).

## D. RECOMMENDED DISPOSITION OF THE PETITION

At the second hearing in this proceeding held pursuant to Rule §89.151(d)(2) disciplinary counsel introduced into evidence the record of a prior disciplinary proceeding against respondent in which he was publicly censured, Office of Disciplinary Counsel v. [Anonymous], Supreme Court of Pennsylvania No. 177, Disciplinary Docket no. 1 (January 9, 1978) (Disciplinary Board File no. 12 D.B. 76); 8 D. & C. 3d 294 (1977).

At that hearing, respondent appeared and testified as to his background and the circumstances under which the events summarized in our findings of fact and in the prior disciplinary proceeding occurred. Basically he said that he accepted the three plaintiffs' personal injury claims shortly after beginning a new position as claims counsel for the bankrupt [ ] Company, that his workload at the [ ] Company became so heavy (at one time reaching more than 700 cases) that he neglected or did not have time to give proper attention to the three cases. He testified that he has now entered into settlements with all three clients, borrowing the money to do so, and that accordingly none of the clients has been damaged by his neglect.

Counsel for respondent argued that the violation involved in the present proceeding occurred at substantially the same time as the two violations for which respondent was publicly censured, and that all three complaints should have been heard and disposed of at the same tme. He argued that respondent has already been more than adequately punished by the public censure for the two earlier

complaints and that if any sanction for the present complaint is called for, it should at most be a private reprimand.

The argument that the complaint involved in this proceeding should have been heard and disposed of together with the two complaints for which respondent was publicly censured has no merit since the present complaint was not brought to the attention of disciplinary counsel until after the hearing committee that heard the other two complaints had filed its report.

If the conduct involved in the proceeding before us had occurred after respondent had been disciplined for the other two violations, we would consider a very severe sanction appropriate. But that is not the case. Respondent's neglect of the [A] case and his subsequent deceptions in an effort to conceal the neglect occurred during the same time period as the two cases involved in the prior disciplinary proceeding. We believe the public censure in the prior proceeding is an adequate sanction for all three and that no greater sanction would have been imposed if all three had been considered together. For this reason, and because of respondent's otherwise exemplary record during his very active trial practice since his admission to the bar in 1965, we believe a private reprimand would be the appropriate sanction in this matter.

For the foregoing reasons, the hearing committee recommends that respondent receive a private reprimand for the disciplinary violations found by this committee.

## ORDER

UNKOVIC, *Chairman*, And now, November 3, 1978, the report and recommendation of hearing

committee [   ] dated August 23, 1978, is accepted; and it is ordered and decreed, that the said [Respondent] of [   ] County, be subjected to private reprimand by the Disciplinary Board of the Supreme Court of Pennsylvania as provided in Rule 204(5) of the Pennsylvania Rules of Disciplinary Enforcement at the next session of this board.